

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| DE'RAOUL FILES, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CASE NO: 6:22-cv-00542-RDP-SGC** |
| | ) | |
| | ) | |
| **WARDEN DEBORAH TONEY,** | ) | |
| **WARDEN JEFFREY BALDWIN,** | ) | |
| **WARDEN ROLANDA CALLOWAY,** | ) | |
| **WARDEN JOHN CROW, MR.** | ) | |
| **THOMPSON, MS. GOODMAN,** | ) | |
| **WARDEN MARY COOKS, DAVID** | ) | |
| **TOLBERT, WARDEN SCARLOTTE** | ) | |
| **ROBINSON, MS. JONES, TAYLOR** | ) | |
| **MCELROY, WARDEN CYNTHIA** | ) | |
| **MCCOVERY, and JOHN DOE ADA** | ) | |
| **COORDINATOR,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFEDANTS DEBORAH TONEY, JEFFREY BALDWIN, ROLANDA CALLOWAY, JOHN CROW, MARY COOKS, SCARLOTTE ROBINSON, AND CYNTHIA MCCOVERY'S MOTION TO DISMISS THE AMENDED COMPLAINT**

*/s/ Leroy Maxwell, Jr.*
Leroy Maxwell, Jr.
Kristen Gochett


Maxwell & Tillman
2326 2nd Avenue North
Birmingham, AL 35203
Phone: (205) 216-3304
Fax: (205) 409-4145
maxwell@mxlawfirm.com
kgochett@mxlawfirm.com


*Attorneys for Plaintiff*

1

## <u>TABLE OF CONTENTS</u>

Introduction…………………………………………………………………………..…3

Standard of Review……………………………………………………………………4

Argument………………………………………………………………………………4

    **I.**    Plaintiff's Amended Complaint Meets the Specificity Requirements of Rules 8(a)(2) 8and 10(b) of the Federal Rules of Civil Procedure…………………………….…4

    **II.**    Plaintiff's Claims Accruing Prior to April 29, 2020 Were Continuous in Nature……………………………………………………………………………7

    **III.**    Plaintiff Has Standing to Bring His Claims Against the Warden Defendants…………8

    **IV.**    Plaintiff Adequately States a Claim for Damages Under the American with Disabilities Act (ADA)……………………………………..……………………………..………10

    **V.**    Plaintiff Adequately States a Claim that the Warden Defendants Violated his Constitutional Rights Under the Eighth Amendment…………………….…..………12

        **A.**  The Warden Defendants' Deliberate Indifference to Plaintiff's Serious Medical Need……………………………………………………...……………………12

        **B.**  Plaintiff Concedes His Failure to Intervene Claim………………………………14

    **VI.**    The Warden Defendants are Not Entitled to Qualified Immunity in Count Two………………………………………………………………………………..14

        **A.**  Violation of the ADA……………………………………………………………15

        **B.**  Clearly Established………………………………………………...……………15

    **VII.**    Plaintiff's Amended Complaint States Viable State Law Claims against Warden Defendants……………………………………………………………………...17

        **A.**  Count IV: Negligence……………………………………………...……………17

        **B.**  Count V: Tort of Outrage………………………………………...……….....…18

    **VIII.**  Warden Defendants are Not Entitled to State-Agent Immunity………………………..19

Conclusion………………………………………………………………………………21

Certificate of Service……………………………………………………………………22

## INTRODUCTION

Plaintiff commenced this action against Defendant Wardens Deborah Toney, Jeffrey Baldwin, Rolanda Calloway, John Crow, Mary Cooks, Scarlotte Robinson, Cynthia McCovery (hereinafter "Warden Defendants") for violating Title II of the Americans with Disabilities Act ("ADA"), codified in 42 U.S.C § 12132, the Constitution of the United States, codified in 42 U.S.C. § 1983, and Alabama law.[1] Plaintiff's Amended Complaint alleged that Defendants collectively denied Plaintiff, a double above-knee amputee, reasonable accommodations, humane treatment, and mental health care while in custody of the Alabama Department of Corrections ("ADOC"). As explained more fully below, Warden Defendants' Motion to Dismiss is due to be denied.

---

[1] Plaintiff also named Mr. Thompson, Ms. Goodman, Ms. Jones, John Doe ADA Coordinator "Defendant John Doe," David Tolbert, and Taylor McElroy as Defendants in this action. Warden Defendants are the only Defendants referred to in this Opposition because Defendants collectively filed a Motion to Dismiss (Doc. 23) this action against them.

## STANDARD OF REVIEW

When faced with a Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss, a court must accept all factual allegations in the complaint as true and ascertain whether the complaint in its entirety pleads a claim on which relief can be granted. *Tellabs, Inc. v. Makor Issues & Rights, Ltc.*, 551 U.S. 308, 322-23, 127 S.Ct. 2499 (2007). *In Bell Atl. Corp. v. Twombly*, the United States Supreme Court took a two-pronged approach in analyzing a motion to dismiss. First, a court should assume the veracity of well-pleaded factual allegations. *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964-65. Second, the court should consider whether the factual allegations in the complaint, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. 544 at 570, 127 S.Ct. at 1964)). A claim is plausible on its face when the complaint pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. 544 at 556, 127 S.Ct. at 1964)). However, while the standard is that the defendant's misconduct be plausible, it is not required that the complaint show the misconduct be probable. *Id.*, *see Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) ("The issue [in a Rule 12(b)(6) Motion to Dismiss] is not whether the plaintiff will ultimately prevail, but 'whether the claimant is entitled to offer evidence to support the claims.'").

## ARGUMENT

### I.   Plaintiff's Amended Complaint Meets the Specificity Requirements of Rules 8(a)(2) and 10(b) of the Federal Rules of Civil Procedure.

Federal Rule of Civil Procedure 8(a)(2), only requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Gipson v. Sec'y of the United States Dep't of the Treasury*, 675 Fed. Appx. 960, 963 (11th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). A

dismissal is proper under Rules 8(a)(2) and 10(b) only when "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1325 (11th Cir. 2015) (quoting *Anderson v. District Bd. of Trustees of Cent. Fla. Community College*, 77 F.3d 364, 366 (11th Cir. 1996)).

The Eleventh Circuit has identified four "rough types or categories of shotgun pleadings." *Weiland*, 792 F.3d at 1321. The fist category "is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321. The second category is a complaint "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322. The third category "is one that commits the sin of not separating into a different count each cause of action or claim for relief. *Id.* at 1322-23. The fourth category "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claims is brought against." *Id.* at 1323.

Plaintiff's Amended Complaint is not a shotgun pleading as it does not fall into either category of shotgun pleadings described in *Weiland*. In their Motion to Dismiss, Warden Defendants argued that Plaintiff's Amended Complaint should be dismissed because Plaintiff "assert[ed] multiple claims against "all" Defendants without specifying which of the defendants are responsible for each acts or omissions." (Doc. 23, p. 7). Defendants' arguments fall flat, as such assertion wholly mischaracterizes the Amended Complaint.

At all times relevant to this action, Plaintiff was a double above-knee amputee housed at various facilities in the Alabama Department of Corrections. (Doc. 13, ¶¶ 18-19). In his Amended Complaint, Plaintiff *brought* the following causes of actions against various employees

with the ADOC, including the Warden Defendants: Violation of the American with Disabilities Act (Count I), Deliberate Indifference to Serious Medical Needs and Treatment (Count II), Failure to Intervene (Count III), Negligence (Count IV), and Intentional Infliction of Emotional Distress (Count V). The Amended Complaint clearly separates each cause of action and claim for relief sought, clearly adopts and re-alleges specific factual allegations that apply to the corresponding cause of action or claim for relief, and clearly explains which Defendants each cause of action or claim for relief applies to.

For example, Counts I and II apply to all Defendants. Both counts clearly separate each cause of action and claim for relief, specifically adopt and re-allege paragraphs of factual allegations that apply to each cause of action, and clearly states that each of those three counts apply to all Defendants. (Doc. 13, ¶¶ 102-135). Similarly, Count III separates each cause of action and claim for relief, specifically adopts and re-alleges paragraphs of factual allegations that applies to Count III, and clearly and specifically state that the cause of action *only* applies to specifically named Defendants – not to all Defendants as Warden Defendants allege in their Motion to Dismiss. *See* Doc. 23, p. 3. ("All five of Plaintiff's claims are raised collectively against "all Defendants" without offering any specification of how each individual defendant was responsible for the alleged violation of Plaintiff's rights.")

As pled, Defendants can adequately respond to Plaintiff's Amended Complaint. The Complaint clearly lists each cause of action separately and distinctly, clearly realleges the factual allegations that correspond with each cause of action, and clearly lists which Defendant(s) each cause of action applies to. Because it is not "virtually impossible" for Defendants to know which allegations of fact or intended to support each claim for relief, Defendants' Motion to Dismiss on these grounds are due to be denied. *Weiland*, 792 F.3d at 1325.

**II.    Plaintiff's Claims Accruing Prior to April 29, 2020 Were Continuous in Nature.**

Federal law "governs when a federal civil rights claim accrues." *Karantsalis v. City of Miami Springs*, 17 F.4th 1316, 1322 (11th Cir. 2021). Generally, "the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Id.* (quoting *Rozar v. Mullis*, 85 F.3d 556, 561 (11th Cir. 1996). "Plaintiffs must know or have reason to know that they were injured, and must be aware or should be aware of who inflicted the injury." *Id.* at 562-63. Further, "[t]his rule requires a court to first identify the alleged injuries, and then to determine when plaintiffs could have sued for them." *Id.* at 563.

In *Karantsalis*, the Plaintiff first brought a claim against the City of Miami regarding public rights-of-way in 2008. 17 F.4th at 1320. The Plaintiff had been diagnosed with MS, but his symptoms were not severe at that time. *Id.* Plaintiff dismissed his suit and filed the suit again in 2017 when his disability severely progressed, making it difficult for him to access and use "the City's services and programs because the City ha[d] not made its facilities housing them accessible for individuals with physical disabilities." *Id.* t 1321. The City filed a motion to dismiss arguing that the plaintiff's "Third Amended Complaint violated the applicate four-year statute of limitations [under Florida law]" . . .because the plaintiff "knew of his MS diagnosis since at least 2008." *Id.* The *Karantsalis* Court held that the plaintiff's claim was not time barred. *Id.*

Similarly to the plaintiff in *Karantsalis*, Plaintiff knew of the lack of ADA accommodations at ADOC facilities prior to filing his *pro se* Complaint in April 29, 2020. However, the lack of ADA accommodations were not a single, isolated incident. The deprivations were continuous, widespread, and blatant during the two years in which Plaintiff was transferred between facilities before finally being assigned to Hamilton Aged & Infirmed.  Plaintiff Files was

sentenced to the ADOC in 2019. (Doc. 13, ¶ 19). Plaintiff was a double above-knee amputee at the time of his sentencing. (*Id.* at 18). Before 2020, Plaintiff had trouble accessing the showers and restrooms at the various facilities he was housed in. (*Id.* at ¶¶ 31, 40, 47, 52, 53-55, 59). However, the lack of accommodations got progressively worse as Plaintiff fell and knocked himself unconscious in the shower because of the lack of guardrails, was in constant pain due to the fall that substantially affected his quality of life, was denied regular access to his prescribed medications, and forced to was up in a sink because the showers became too dangerous for him to take use. (*Id.* at ¶¶ 54-55, 59, 84-85, 94).

Although Plaintiff made several factual allegations against several Defendants for violation of his rights as a double above-knee amputee, the facts alleged against Warden Defendants are clear – Defendants collectively violated Plaintiff's rights as wardens at their assigned institutions. Even if this Honorable Court finds that Plaintiff's claims arising before he filed his *pro se* Complaint on April 29, 2020 are time barred, there are sufficient claims against Warden Defendants after that time which sufficiently plead Defendants violated plaintiff's rights under the ADA, United States Constitution, and Alabama law.

### III.    Plaintiff Has Standing to Bring His Claims Against the Warden Defendants.

The constitutionally minimum requirements for a plaintiff to establish standing are three-fold. *Fla. State Conf. of the NAACP v. Browning*, 522 F.3d 1153, 1159 (11th Cir. 2008). The requirements are as follows:

> First, the plaintiff must have suffered, or must face an imminent and not merely hypothetical prospect of suffering, an invasion of a legally protected interest resulting in a concrete and particularized injury. Second, the injury must have been caused by the defendant's complained--of actions. Third, the plaintiff's injury or threat of injury must likely be redressible by a favorable court decision.

*Id. See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations omitted). Because Plaintiff has satisfied all three elements to establish standing, he can proceed against the Warden Defendants.

Plaintiff has sufficiently pled "concrete and particularized" injuries as a result of Defendants' violations of the ADA. At Elmore Correctional Facility, Plaintiff had difficulty accessing the showers and toilets. (Doc. 13, ¶ 31). The showers lacked shower rails, shower chair, and shower hoses. (*Id.* at ¶ 34). Defendants Crow and Baldwin had actual knowledge of the lack of ADA accommodations and "agreed that [Plaintiff] would be better served with a transfer [to a more suitable facility]." (*Id.* at ¶ 32). Additionally, when transferred back to Elmore, Plaintiff was forced into the same situation and was not afforded a restroom that could meet his basic needs – making it extremely difficult to care for himself. Plaintiff wrote Defendant Calloway directly and was ignored. (*Id.* at ¶ 95). Despite such actual knowledge that Elmore could not accommodate Plaintiff's disability, Plaintiff was housed at Elmore for several months, enduring constant difficulties in accessing the showers and toilets. (*Id.* at ¶¶ 31, 33-35, 93-94). At Fountain Correctional Facility, Plaintiff was housed on the floor of the infirmary that was polluted with rodents. (*Id.* at ¶ 40). Plaintiff wrote Defendant Cooks[2] directly, highlighting the lack of accommodations and cruel and unusual punishment. (*Id.* at ¶ 41). Defendant Cooks therefore had actual knowledge that Fountain could not accommodate Plaintiff's disability and failed to address Plaintiff's living and sleeping arrangements altogether. (*Id.* at ¶¶ 41-43). At Limestone Correctional Facility, Plaintiff experienced extreme difficulty in accessing the shower and restroom. (*Id.* at ¶ 48). In fact, Plaintiff had to be helped by other inmates onto a metal fold out chair in the shower, had to hold his bladder until roll-up urinals were available, and fell in the

---

[2] Defendant Cooks was incorrectly named Defendant "Crooks" in the Amended Complaint.

shower and knocked himself unconscious. (*Id.* at ¶¶ 48, 54). Plaintiff wrote Defendants Toney and Robinson – both of which ignored Plaintiff's letters. (*Id.* at ¶ 58). Finally, at Bibb County Correctional Facility, Plaintiff routinely ran out of his prescribed Tylenol 3, pain patch, and/or third prescription. (*Id.* at ¶¶ 84-85).[3] Plaintiff wrote Defendant McCovery directly – the only response he received was a change in housing assignment to a dorm that lacked ADA accommodations altogether. (*Id.* at ¶¶ 86, 88).

   As explained more fully above, Plaintiff satisfied the "injury in fact" prong necessary to establish standing. Such injuries were both concrete and particularized. Plaintiff wrote to each Warden Defendant, at their respective facility, and explained the extreme difficulty he faced in accessing the facilities' showers, restrooms, and other amenities and pleaded for more suitable living conditions. Each of his requests was ignored or disregarded by the wardens whose primary obligation was to oversee their assigned institutions. Thus, Plaintiff has standing to bring the claims alleged in his Amended Complaint against the Warden Defendants.

### IV. Plaintiff Adequately States a Claim for Damages Under the American with Disabilities Act (ADA).

   Title II of the ADA "prohibits discrimination by public entities against disabled individuals." *Karantsalis*, 17 F.4th at 1322 (internal quotations omitted). To state a claim under Title II of the ADA, a plaintiff must establish the following three elements: "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, activities, or otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Id.* (quoting *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019)). Additionally, "as to existing facilities, a public entity must operate each service,

---

[3] Plaintiff's prescriptions helped control his pain.

program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." *Id.* (quoting *Shotz v. Cates*, 256 F.3d 1077, 1080 (11th Cir. 2001)) (internal quotations omitted).

A plaintiff seeking damages under the ADA "must prove that the entity that he has sued engaged in intentional discrimination, which requires a showing of deliberate indifference." *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (quoting *J.S., III by & through J.S. Jr v. Hous. Cty. Bd. of Educ.*, 877 F.3d 979, 987 (11th Cir. 2017)) (internal quotations omitted). Deliberate indifference requires "proof that the defendant knew that harm to a federally protected right was substantially likely. . .and failed to act on that likelihood." *Id.* (internal quotations omitted). Additionally, "in order to hold a government entity liable, the plaintiff must demonstrate that an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [entity's] behalf had actual knowledge of discrimination in the [entity's] programs and fail[ed] adequately to respond." *Id.* (quoting *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 348 (11th Cir. 2012)) (internal quotations omitted). The official "must be high enough up the chain-of-command that his [or her] acts constitute an official decision by the [entity] not to remedy the misconduct." *Id.* (internal quotations omitted).

As described more fully above, *see supra* Section III, Plaintiff wrote each Warden Defendant directly highlighting the lack of ADA accommodations at each facility and the danger it posed to his safety and well-being. At Elmore, the ADA Coordinator documented that he shared Plaintiff's accommodation request with "Warden Crow and Warden Baldwin [who] agree[d] that [Plaintiff] would be better served with a transfer." (Doc. 13, ¶ 32.). Additionally, Plaintiff wrote Defendant Warden Calloway directly highlighting the same issues. (*Id.* at ¶ 95). At Fountain, Plaintiff wrote Defendant Warden Cooks directly, highlighting the issues he faced accessing the

11

facilities and the lack of ADA accommodations at the facility. (*Id.* at ¶ 41). At Limestone, Plaintiff wrote Defendant Wardens Toney and Robinson directly, highlighting the issues he faced accessing the facilities and the lack of ADA accommodations at the facility. (*Id.* at ¶ 58). Finally, at Bibb County, Plaintiff wrote Defendant McCovery directly, highlighting the issues he faced accessing the facilities and the lack of ADA accommodations at the facility. (*Id.* at ¶ 86).

As Wardens, each Defendant was responsible for the operation of his or her assigned institution. As described above, each of the Warden Defendants had actual knowledge of the discrimination Plaintiff faced. Plaintiff wrote each Defendant, and each of his requests were ignored or disregarded. In fact, some of the Defendants even recognized the risk of harm and discrimination Plaintiff faced at their assigned institutions and failed to institute any sort of corrective measure on the ADOC's behalf. Moreover, even if a transfer to Hamilton Aged and Infirmed was not feasible due to COVID, as Defendants pointed out, Defendants failed to ensure that their facilities were nevertheless equipped to accommodate Plaintiff while he was housed at their respective facility.

## V.   Plaintiff Adequately States a Claim that the Warden Defendants Violated his Constitutional Rights Under the Eighth Amendment.

### A. The Warden Defendants' Deliberate Indifference to Plaintiff's Serious Medical Need.

For a plaintiff to prevail on a § 1983 claim for inadequate medical treatment, he must show "(1) a serious medical need; (2) the health care provider's deliberate indifference to that need; and (3) causation between the health care providers' indifference and [plaintiff's] injury." *Nam Dang v. Sheriff, Seminole Cty. Fla.*, 871 F.3d 1272, 1279 (11th Cir. 2017). A serious medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.*

at 1280. (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). The medical need "must be one that, if left unattended, poses a substantial risk of serious harm." *Id.*

To establish deliberate indifference to serious medical need, a plaintiff must prove "(1) subjective knowledge of a risk of serious harm; and (2) disregard of that risk (3) by conduct that is more than mere negligence." *Id.* (quoting *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)). A defendant's subjective knowledge of the risk requires that he be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099-1100 (11th Cir. 2014). However, "[Imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference . . .each individual defendant must be judged separately on the basis of what that person kn[ew]. *Burnett v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). A defendant" disregards a serious risk by more than mere negligence when he [or she] knows that an inmate is in serious need of medical care, but he [or she] fails or refuses to obtain medical treatment for the inmate. *Id.* (quoting *Lancaster v. Monroe Cty., Ala.*, 116 F.3d 1419, 1425 (11th Cir. 1997)) (internal quotations omitted). "Even when medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs. *Id.* Additionally, "medical care is so cursory as to amount to no treatment at all may amount to deliberate indifference." *Id.* (quoting *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989)). Finally, "medical treatment violates the Constitution only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* (quoting *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)).

As described throughout the Amended Complaint Plaintiff, as a double above-knee amputee, had a serious medical need "so obvious that even a lay person could recognize" such

need. *Nam Dang*, 871 F.3d at 1279. Even more, as alleged in the Amended Complaint and above, *see supra* Sections III and IV, Plaintiff's serious medical need was "evident by the several grievances he submitted to *each* Defendant while house at their respective facilities." (Doc. 13 at ¶ 117) (emphasis added). Each Defendant had subjective knowledge of the risk of harm Plaintiff faced by being forced to use showers, toilets, and other amenities that could not accommodate his disability. Moreover, Defendants drew the inference of the risk of harm. For example, Defendant Wardens Crow and Baldwin "agreed that [Plaintiff] would be better served with a transfer [from Elmore]." (*Id.* at ¶ 32). Additionally, Defendant Cooks apologized for the lack of accommodations at Fountain. (*Id.* at ¶ 43). These examples demonstrated that Warden Defendants had actual knowledge of the risk of harm Plaintiff faced if not transferred immediately, and each Defendant disregarded such risk.

### B.  Plaintiff Concedes His Failure to Intervene Claim.

### VI.    The Warden Defendants are Not Entitled to Qualified Immunity in Count Two.

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). For qualified immunity to apply, a government official must initially establish he or she was acting within his or her discretionary authority when the alleged wrongful act occurred. *Melton v. Abston*, 841 F.3d 1207, 1221 (11th Cir. 2016). "Once it has been determined that an official was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to establish that qualified immunity is inappropriate." *Id.* "First, the plaintiff must show that the official's alleged conduct violated a constitutionally protected

right." *Id.* "Second, the plaintiff must demonstrate that the right was clearly established at the time of the misconduct." *Id.*

### A.  Violation of the ADA

It is well-settled that Title II of the ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodation of any place of public accommodation by any person who. . .operates a place of public accommodation." *Haynes v. Dunkin' Donuts, LLC*, 741 Fed. Appx. 752, 753 (11th Cir. 2018). Title II of the ADA defines a public entity as "any department, agency, special purpose district, or other instrumentality of a state or states or local government." *Morgan v. Christensen*, 582 Fed. Appx. 806 (11th Cir. 2014) (citing 42 U.S.C.S. § 12131(1)(B)). Prisons "fall within the statutory definition of "public entity" under the ADA." *Penn. Dep't of Corrs. V. Yeskey*, 524 U.S. 206, 210, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998). In his Amended Complaint, Plaintiff consistently and sufficiently alleged that Warden Defendants violated his rights under the ADA when they failed to accommodate his disability as a double above-knee amputee housed at various facilities in the ADOC. *See generally* Doc. 13. Such failures included depriving Plaintiff of the right to access showers, toilets, and other amenities at the facilities as enjoyed by non-disabled inmates. *Id.*

### B.  Clearly Established

For a right to be clearly established, "the contours of [the] right must be sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Mighty v. Miami-Dade Cnty.*, 659 Fed. Appx. 969, 973 (11th Cir. 2016) (quoting *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023, 188 L.Ed. 2d 1056 (2014)). "The salient question is whether the state of the law at the time of [the] incident provided fair warning to the Defendant

that his alleged conduct was unconstitutional." *Id.* (quoting *Tolan v. Cotton*, 134 S.Ct. 1861, 1866, 188 L.Ed. 2d 895 (2014)) (internal quotations omitted). To determine whether a right was clearly established at the time of the deprivation, a plaintiff can satisfy his burden by demonstrating: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *D.H. by Dawson v. Clayton Cty. Sch. Dist.*, 830 F.3d 1306, 1318 (11th Cir. 2016).

In *Lonergan v. Fla. Dep't of Corr.*, the plaintiff-inmate was referred to a dermatologist "for what appeared to be sun cancer." 623 Fed. Appx. 990, 991 (11th Cir. 2015). The plaintiff had two pre-cancerous growths removed, and he was ordered to be provided "a large hat, sun block, and a "no sun pass." *Id.* Plaintiff was only issued a "15 minutes per hour of sun" pass due to security concerns. *Id.* Plaintiff requested to be transferred to a "self-contained" facility – one where he would not be outside. *Id.* The warden denied the request, but the plaintiff was eventually transferred to another facility. *Id.* The plaintiff requested ADA accommodations – both of which were denied. *Id.* At the new prison, Plaintiff was required to stand in line in the sun due to the prison's layout. *Id.* Plaintiff alleged that "eating, going to work, call seeking medical care, going to AA meetings, going to chapel, and receiving visitors" required him to stand in line in the sun. *Id.* at 991-92. Plaintiff alleged that "the prison's failure to accommodate his skin condition" caused him to forego those activities. *Id.* at 992.

In evaluating the inmate-plaintiff's claims, the *Lonergan* Court explained that "as a matter of law, a prisoner is never entitled to a transfer to a different prison as a reasonable accommodation under the ADA." *Lonergan*, 623 Fed. Appx. at 993. Instead, "prison authorities

still maintain a great deal of discretion in running their penal institutions, and such discretion normally outweighs any interest that any individual prisoner may have in remaining housed in a particular prison." *Id.* In the context of the ADA, however, "a prisoner's transfer from or to a particular prison may become relevant when prison officials attempt to determine what constitutes a "reasonable accommodation." *Id.* at 993-94. The Court concluded that "[w]hile the Plaintiff may have a difficult time ultimately obtaining the relief he seeks, whether the prison's interests outweigh the Plaintiff's is not appropriate for resolution on the pleadings." *Id.* at 994.

Like the plaintiff-inmate in *Lonergan*, Plaintiff Files required ADA accommodations and the transfer to a prison that could better accommodate such disabilities. Although the general rule explains that an inmate is never entitled to transfer to another prison, in context of the ADA, the general rule can be excepted when that transfer is for a reasonable accommodation. *See Lonergan*, 623 Fed. Appx. at 993-94. Plaintiff's Amended Complaint clearly pled that Warden Defendants believed a transfer was a reasonable accommodation for Plaintiff's disability. Despite such knowledge and understanding, Defendants prolonged Plaintiff's stay at various facilities. In fact, Plaintiff was housed in facilities that could not accommodate his disability for approximately two years. *See generally* Doc 13. Because Warden Defendants violated Plaintiff's rights as secured by the ADA, and those rights were clearly established at the time of the deprivations, Defendants are not entitled to qualified immunity.

## VII. Plaintiff's Amended Complaint States Viable State Law Claims against Warden Defendants.

### A. Count IV: Negligence

To establish negligence under Alabama law, a plaintiff must prove: (1) duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury."

*Cook's Pest Control, Inc. v. Rebar*, 28 So.3d 716, 725 (Ala. 2009) (quoting *Albert v. Hsu*, 602 So. 2d 895, 897 (Ala. 1992)). Here, the elements of a cause of action for negligence had been satisfied. First, each Warden Defendant had a duty to plan, direct, and control his assigned institution. Second, each Warden Defendant breached that duty when they failed to ensure that their assigned institution complied with the provisions of the ADA. Third, each Warden Defendant denied Plaintiff access to reasonable accommodations (i.e., transfer to a more suitable prison) during his stay at their respective facilities. Finally, Plaintiff suffered damages because of Defendants' breach. At Elmore, Plaintiff could not access the showers and toilets safely. (Doc. 13, ¶ 32). The showers that Plaintiff were forced to use were not equipped with shower rails, shower chairs, or shower hoses. (*Id.* at ¶ 34). At Fountain, Plaintiff, an above-knee amputee, was forced to sleep on a rodent-infested floor. (*Id.* ¶ 39). At Limestone, Plaintiff fell while transferring himself from the toiler to his wheelchair because of the lack of handrails, knocking himself unconscious. (*Id.* at ¶ 54). The fall caused Plaintiff to suffer in pain while performing daily tasks such as making his bed, taking a shower, and brushing his teeth. (*Id.* at ¶ 59). Warden Defendants' collective breach of their duty to plan, direct, and control their assigned constitution caused Plaintiff's mental health to deteriorate. (*Id.* at ¶ 63). Plaintiff ultimately had to be referred to mental health because of such negligence. (*Id.* at ¶ 64).

### B.  Count V: Tort of Outrage

To establish intentional infliction of emotional distress under Alabama law, a plaintiff must show that "(1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff distress; and (4) the distress was severe." *Harris v. McDavid*, 553 So. 2d 567, 570 (Ala. 1989). The conduct must be "so outrageous in

character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.* (quoting *American Road Service Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1981)).

Here, Plaintiff has sufficiently pled a claim for intentional infliction of emotional distress. As alleged, Warden Defendants failed to offer Plaintiff any reasonable accommodation for his disability. (Doc. 13, ¶ 146). Plaintiff was forced to shower in unsafe conditions and often unable to shower regularly for that very reason, Plaintiff was unable to transport himself around the facilities – often requiring assistance from other inmates, and Plaintiff was unable to enjoy amenities and programs that non-disabled inmates enjoyed. (*Id.* at ¶ 147). Warden Defendants assertion that "the defendants who were informed of Plaintiff's complaints intended to remedy the problems he pointed out to them" is a mischaracterization of the factual allegations alleged in the Amended Complaint. (Doc. 23 at p. 29). Warden Defendants Crow and Baldwin agreed that Plaintiff should be transferred to a more suitable facility for his disability and Warden Cook even apologized for Plaintiff's treatment at her institution. (Doc. 13 at ¶¶ 32, 43). However, nothing was *done* by either Warden Defendant to remedy Plaintiff's issues.

### C.  Warden Defendants are Not Entitled to State-Agent Immunity.

State-agent immunity safeguards State employees "in the exercise of their judgment in executing their work responsibilities". *Ex parte Kennedy*, 992 So. 2d 1276, 1281 (Ala. 2008) (quoting Ex parte *Hayles*, 852 So. 2d 117, 122 (Ala. 2002)). An exception to this general rule applies under certain circumstances. This exception is as follows:

> Notwithstanding anything to the contrary in the foregoing statement of the rule, a State-agent shall not be immune from civil liability in his or her personal capacity
>
> (1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulation of this State

19

> enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
>
> (2) when the State agents acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

*Id.* (quoting *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000)).

An individual asserting State-agent immunity "bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the State-agent to immunity." *Ex parte Kennedy*, 992 So. 2d 1276, 1282 (Ala. 2008). If this initial burden is proved, the burden shifts to the plaintiff to show "that one of the two categories of exceptions to the State-agent immunity.... is applicable." *Id.*

Here, Plaintiff sufficiently pled factual allegations that demonstrate that Warden Defendants acted willfully and maliciously in failing to ensure his state-law rights were not violated. As alleged more fully above, *see supra* Sections III and IV, Defendants willfully ignored each of Plaintiff's grievances in which he pled for reasonable accommodations for his disability. Warden Defendants argue that they only failed to "respond to Plaintiff's grievance forms in the manner Plaintiff requested." (Doc. 23, p. 33). However, when reviewing the factual allegations as true at this stage of the proceedings, Warden Defendants failed to respond or remedy Plaintiff's issues *altogether.* (Doc. 13, ¶¶ 32, 41, 58, 86, 88, 95). For nearly two years, such willfulness and maliciousness caused Plaintiff to suffer while being transferred between facilities that lacked ADA accommodations. Therefore, Warden Defendants are not entitled to State-agent immunity for Plaintiff's state law claims for negligence and outrage.

## **<u>CONCLUSION</u>**

For the reasons stated herein, the Warden Defendants' Motion to Dismiss is due to be

denied. (Doc. 23).

Respectfully submitted,

*<u>/s/ Leroy Maxwell, Jr.</u>*
Leroy Maxwell, Jr.
Kristen Gochett
*Attorneys for Plaintiff*

**OF COUNSEL:**
**Maxwell & Tillman**
2326 2nd Avenue North
Birmingham, AL 35203
Phone: (205) 216-3304
Fax: (205) 409-4145
maxwell@mxlawfirm.com
kgochett@mxlawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of May 2023, I have electronically filed a copy of the foregoing document with the Clerk of the Court using the CM/ECF electronic filing system, which will send notification of such filing the following counsel of record:


**State of Alabama**
**Office of the Attorney General**
**Laura E. Howell**
501 Washington Avenue
Montgomery, AL 36130-0152
Phone: (334) 242-7300
Fax: (334) 353-8400
Laura.Howell@AlabamaAG.gov


*Counsel for Warden Defendants*

<u>*/s/ Leroy Maxwell, Jr.*</u>
OF COUNSEL

22