UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| DE'RAOUL BRODERICK FILES, | } |
| Plaintiff, | } |
| v. | } Case No.: 6:22-cv-00542-RDP |
| DEBORAH TONEY, et al., | } |
| Defendants. | } |

## MEMORANDUM OPINION

This matter is before the court on the Motion to Dismiss filed by Defendants Deborah Toney, Jeffrey Baldwin, Rolanda Calloway, John Crow, Mary Cooks, Scarlett Robinson, and Cynthia McCovery (collectively, "Defendants" or "Warden Defendants").[1] (Doc. # 22). The Motion has been fully briefed (Docs. # 35, 36), and is ripe for decision. For the reasons discussed below, Defendants' Motion is due to be granted.

**I.      Introduction**

Plaintiff De'Raoul Files is a double above-knee amputee. (Doc. # 13 ¶ 18). He claims that while he was incarcerated at various Alabama Department of Corrections ("ADOC") institutions Defendants violated his rights under the Americans with Disabilities Act ("ADA"), the United States Constitution, and Alabama law. He also alleges that Defendants, ADOC employees, systematically and intentionally refused to provide him the accommodations he needed for his disability. (*Id.* at 23-32).

---

[1] Although the Motion to Dismiss was filed by only certain Defendants, because all defendants are individual defendants, the court's analysis applied equally to the non-moving Defendants.

**II.     Background**

In his Amended Complaint (Doc. # 13), Plaintiff claims that he was initially incarcerated at Elmore Correctional Facility, where he spent approximately two months. (*Id*. ¶ 25). The Amended Complaint does not indicate when Plaintiff was first assigned to Elmore. While there, Plaintiff complained to Elmore's ADA coordinator (Defendant Thompson) about the lack of ADA accommodations in the facility's showers. (*Id*. ¶ 26). After two months, Plaintiff was briefly transferred to Fountain Correctional Facility. (*Id*. ¶ 28). There, Plaintiff alleges he was housed at the facility's rodent-infested infirmary and made to sleep on the floor. (*Id*. ¶¶ 39-40). Plaintiff complained to Warden Mary Cooks and Fountain's ADA coordinator, who both apologized to Plaintiff for the conditions of his incarceration but did not offer him an accommodation. (*Id*. ¶¶ 41-46).

In September 2019, Plaintiff was transferred back to Elmore. (*Id*. ¶ 29). On September 5, 2019, he submitted another request for accommodation, identifying himself as a "double amputee, confined to a wheelchair" and requesting a transfer to the Hamilton Aged and Infirmed Center ("Hamilton A&I"), where accommodations could be provided. (*Id*. ¶ 31). Defendants Thompson, Warden Crow, and Warden Baldwin agreed that Elmore could not properly accommodate Plaintiff. (*Id*. ¶ 33). Nevertheless, Plaintiff remained incarcerated at Elmore without shower rails, shower chairs, or shower hoses. (*Id*. ¶ 35).

Plaintiff was eventually transferred to Limestone Correctional Facility. (*Id*. ¶ 47). There, on October 9, 2019, he submitted another grievance, complaining that he could not access the shower or urinal alone. (*Id*. ¶ 48). Defendant McElroy, Limestone's Health Services Administrator, forwarded the grievance to Defendant Tolbert, Limestone's ADA coordinator. (*Id*. ¶ 49). Plaintiff was later transferred to another dorm, but the restrooms there also were not handicap accessible.

(*Id*. ¶ 53). In November 2019, Plaintiff fell while transferring himself from the toilet to his wheelchair, and was knocked unconscious. (*Id*. ¶ 54). On December 22, 2019, Plaintiff submitted another grievance demanding a handicap rail in his bathroom and asking for an update on his requested transfer to Hamilton A&I. (*Id*. ¶ 55).

On February 21, 2020, Plaintiff submitted another grievance, which outlined his efforts to consult a mental health professional about his deteriorating mental condition. (*Id*. ¶ 62). On June 8, 2020, Plaintiff submitted an additional grievance, requesting a transfer to Hamilton A&I, and asking that he be allowed to shower more than three times a week. (*Id*. ¶ 65). In response, Plaintiff was informed that transfers were limited due to Covid-19, but that Plaintiff would now be allowed to shower five times a week and that efforts were being made to make the showers handicap accessible. (*Id*. ¶ 66). Those efforts were unsuccessful, and Plaintiff remained at Limestone without a handicap accessible shower. (*Id*. ¶ 67).

In the winter months of 2020, Limestone experienced an outbreak of Covid-19. (*Id*. ¶ 69). Plaintiff was quarantined in the chapel and gymnasium for about a month with inmates who tested positive for Covid, without heat. (*Id*.). On December 13, 2020, Plaintiff submitted a grievance complaining that he had been locked in the chapel since December 9 waiting on his Covid-19 test result without the ability to shower or to communicate with his family. (*Id*. ¶ 70). He also noted that he was being forced to share a restroom with inmates who had tested positive for Covid-19, that he was not being given water to take his medications, that he was in "excruciating pain," and that he believed he was being treated inhumanely. (*Id*.). In response, McElroy informed Plaintiff that he would remain in quarantine until December 23, 2020, and that he would notify his superiors as to Plaintiff's concerns about his treatment. (*Id*. ¶ 71).

On December 18, 2020, Plaintiff again asked to be allowed to contact his family and take a shower, stating that his body was hurting and that he was shaking uncontrollably because of the temperature in the gymnasium. (*Id*. ¶ 73). Around this time, Plaintiff was assaulted and robbed by another inmate, leading him to renew his request to consult with a mental health counselor. (*Id*.). On December 31, 2020, Plaintiff submitted yet another grievance stating that he had still not been allowed to shower, and he again asked to be transferred to somewhere that could accommodate him. (*Id*. ¶ 76).

In 2021, Plaintiff was transferred to Bibb County Correctional Facility and housed in the handicap-accessible infirmary. (*Id*. at 81-83). Soon after his stay at Bibb Country began, Plaintiff had trouble getting his medication. (*Id*. at 84). Plaintiff submitted a grievance regarding that issue and within two weeks was transferred to a non-handicap accessible dorm. (*Id*. ¶ 86). Plaintiff was later transferred back to Elmore where he resided for about two months. During that time, he claims he experienced the same lack of accommodation he did during his previous stay there. (*Id*. ¶ 90-97).

In February 2022, after over two years in ADOC custody, Plaintiff was transferred to Hamilton A&I. (*Id*. ¶ 99). Plaintiff filed this action on April 29, 2022. (Doc. # 1).

**III.   Legal Standard**

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked

assertion[s]" without supporting factual allegations. *Id*. at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC,* 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

**IV.    Discussion**

In his Amended Complaint, Plaintiff asserts five claims: Count One - violation of Title II of the ADA; Count Two - deliberate indifference asserted under § 1983; Count Three - failure to intervene asserted under § 1983; Count Four – negligence under Alabama law; and Count Five - intentional infliction of emotional distress under Alabama law. (*Id*. at 23-32). In his Opposition to Defendants' Motion to Dismiss, Plaintiff concedes Count Three is due to be dismissed. (Doc. # 35 at 14). The court agrees.

Turning to the remaining claims, Defendants' Motion to Dismiss argues that: (1) Plaintiff's Amended Complaint is an impermissible shotgun pleading; (2) some of Plaintiff's claims are barred by the statute of limitations; (3) Plaintiff lacks standing; (4) Plaintiff's claims against Defendants in their official capacities are barred by Eleventh Amendment immunity; (5) Plaintiff fails to state a claim under the ADA; (6) Plaintiff fails to state a claim under the Eighth Amendment; (7) Defendants are entitled to qualified immunity; and (8) Plaintiff fails to state a claim under Alabama law. (Doc. # 13). The court addresses these arguments below.

    **A.    Shotgun Pleading**

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cty. Sheriff's Off*., 792 F.3d 1313, 1320 (11th Cir. 2015). In *Weiland*, the Eleventh Circuit identified four "rough types or categories of shotgun pleadings." *Id*. at 1321. Defendants argue that the Amended Complaint is the fourth type of shotgun pleading (Doc. # 23 at 8) that involves the "relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id*. at 1322. Defendants argue that Plaintiff has done little more than copy and paste his allegations into each

count, "effectively creating a combination of all counts being rearticulations of the same failure." (Doc. # 23 at 9).[2] This argument misses the mark.

In Plaintiff's first four Counts, he unambiguously names the defendants against whom those claims are brought. (*E.g.*, Doc. # 13 at 25-26). Indeed, Plaintiff not only names the relevant Defendants in each count, but also specifies each Defendant's alleged wrongful conduct. In Count Five, Plaintiff makes a claim against "all Defendants." (Doc. # 13 at 31). However, unlike Counts One through Four, Plaintiff has not specified how each Defendant engaged in the alleged misconduct. Still, while Count Five is less specific than Counts One through Four, it is no less clear about what Plaintiff is alleging and against whom.

To be sure, "[s]hotgun pleadings … exact an intolerable toll on the trial court's docket." *Hirsch v. Ensurety Ventures*, 805 F. App'x 987, 991 (11th Cir. 2020) (quoting *Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997)). However, the court concludes that, properly viewed, Plaintiff's Amended Complaint contains a short and plain statement of each claim and specifically identifies the Defendants named in each claim and thus complies with Rules 8(a) and 10(b) and is therefore not an impermissible shotgun pleading.

### B.  Statute of Limitations

"[For] discrimination claims under Title II of the ADA [] the applicable limitations period is governed by the most analogous state statute of limitations. In Alabama, where this action was brought, the applicable limitations period is two years." *Horsley v. Univ. of Ala.*, 564 F. App'x

---

[2] The court *sua sponte* notes that Plaintiff's Amended Complaint adopts and realleges not every, but virtually every, previous allegation into each count. (Doc. # 13 at ¶¶102, 114, 130, 136, and 144). Thus, Plaintiff's Amended Complaint appears to represent an example of the most common type of shotgun pleading, *i.e.*, "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland*, 792 F.3d at 1321.

1006, 1008 (11th Cir. 2014) (citing *Everett v. Cobb Cty. Sch. Dist.*, 138 F. 3d 1407, 1409-10 (11th Cir. 1998)).

The statute of limitations for claims brought pursuant to § 1983 is determined by the appropriate state statute of limitations governing personal injury claims. *Crowe v. Donald*, 528 F.3d 1290, 1292 (11th Cir. 2008); *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003). In Alabama, "that limitations period is two years." *Powell v. Thomas*, 643 F.3d 1300, 1303 (11th Cir. 2011) (citing *Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483 (11th Cir. 1989) ("The two-year limitations period ... applies to section 1983 actions in Alabama.") (internal alterations omitted)); Ala. Code § 6-2-38(l).

Plaintiff's state law claims are also governed by the two-year statute of limitations. *Bush v. Ford Life Ins. Co.*, 682 So. 2d 46, 47 (Ala. 1996) ("The statute of limitations applicable to a negligence claim is two years."); *Archie v. Enter. Hosp. & Nursing Home*, 508 So. 2d 693, 695 (Ala. 1987) ("[W]e hold that the tort of [] intentional infliction of emotional distress is governed by the two-year statute of limitations found in § 6–2–38(l).").

Plaintiff's initial Complaint was filed on April 29, 2022. (Doc. # 1). Therefore, based on the two-year statute of limitations applicable to each of Plaintiff's claims, claims based on events occurring before April 29, 2020 are time-barred. Plaintiff's Amended Complaint contains numerous allegations stretching back before April 29, 2020. (Doc. # 13 at ¶¶ 25-64). But Plaintiff argues that events before April 29, 2020 are relevant because Defendants' conduct was "continuous, widespread, and blatant," and that "the lack of accommodations got progressively worse." (Doc. # 35 at 7-8).

"The general federal rule is that the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a

reasonably prudent regard for his rights." *Karantsalis v. City of Miami Springs*, 17 F.4th 1316, 1322 (11th Cir. 2021) (citing *Rozar v. Mullis*, 85 F.3d 556, 561-62 (11th Cir. 1996)). But, the record makes clear, and Plaintiff appears to concede, that he "knew of the lack of ADA accommodations at ADOC facilities prior to [] April 29, 2020." (Doc. # 35 at 7).

Essentially, Plaintiff argues that the ongoing ADA violations should be deemed "extraordinary circumstances that would warrant equitable tolling" *Horsley*, 564 F. App'x at 1009. Plaintiff contends that, under equitable tolling, even those claims that arise out of conduct that occurred before April 29, 2020 are timely. (Doc. # 35 at 7-8). The court disagrees.

But, equitable tolling is an extraordinary remedy and is to be applied sparingly. Its application is appropriate only when a plaintiff exercises diligence and untimely files due to extraordinary circumstances that are both beyond his control and unavoidable. *Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006). Equitable tolling typically requires some affirmative misconduct – such as fraud, misinformation, or deliberate concealment. *Jackson v. Astrue*, 506 F.3d 1349, 1355-56 (11th Cir. 2007). Here, such extraordinary circumstances are clearly lacking.

Indeed, that Plaintiff was sufficiently aware that his rights had been violated is evidenced in numerous grievances he filed prior to April 29, 2020. On September 5, 2019, Plaintiff submitted his first grievance while incarcerated at Elmore. (Doc. # 13 ¶ 30). Later, in October of that year, he submitted another grievance while incarcerated at a different facility. (*Id*. ¶ 48). In November 2019, Plaintiff fell and was knocked unconscious, allegedly due to the lack of handrails in the bathroom. (*Id*. ¶ 55). Plaintiff submitted three other grievances, all before the April 29, 2020 date, and each relating to Defendants' failure to accommodate him. (Doc. # 23 at 14-16). The events that led Plaintiff to file these grievances were sufficiently clear to make Defendants' alleged violations "apparent to a person with a reasonably prudent regard for his rights." *Karantsalis*, 17

9

F.4th at 1322. Accordingly, Plaintiff's equitable tolling argument fails, and all claims arising out of conduct that occurred prior to April 29, 2020 are due to be dismissed as untimely.

### C. Eleventh Amendment Immunity to Official Capacity Claims

Plaintiff's Amended Complaint seeks the following relief: "a. Compensatory damages for emotional distress, suffering, inconvenience, mental anguish, and special damages in an amount to be determined by a jury; b. Nominal damages in an amount to be determined by a jury; c. Reasonable attorney's fees and costs; and a. [sic] All other and further monetary and equitable relief as this Honorable Court may deem just and proper." (Doc, # 13 at 32). Plaintiff's Amended Complaint is entirely silent as to whether he intended to sue Defendants in their official or individual capacities. (*See, generally*, Doc. # 13).

"[T]he course of proceedings typically indicates the nature of the liability sought to be imposed." *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994). "The essence of an individual capacity suit is that the plaintiff is seeking to recover from the individual defendant, who is personally liable for the judgment." *Id.* at 1577. In this respect, the present action appears to be an individual capacity action.

However, to the extent, that Plaintiff may have intended his claims against Defendants to be in their official capacities, this would be an action against the official's office and, as such, it is a suit against the State itself. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). "[W]ardens and correctional officers are considered to be state officials." *Moore v. Robinson*, 2021 WL 4046714, at *2 (N.D. Ala. May 26, 2021), *report and recommendation adopted*, 2021 WL 4034087 (N.D. Ala. Sept. 3, 2021) (citing *Cummings v. Davenport*, 2017 WL 3242783, at *4 (N.D. Ala. July 31, 2017), *aff'd*, 906 F.3d 934 (11th Cir. 2018) (wardens); *Bailey v. Hughes*, 815 F. Supp. 2d 1246, 1271 (M.D. Ala. 2011) (correctional officers)). The State and its officials acting in their

official capacities are not "persons" for a section 1983 action. (*Id.*). Moreover, the Eleventh Amendment's sovereign immunity bars an action by its citizens for money damages except if the State waives its Eleventh Amendment immunity or Congress abrogates the immunity. *See Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1524 (11th Cir. 1990). Congress has not abrogated Alabama's Eleventh Amendment immunity in § 1983 cases, nor has the state of Alabama consented to suit. *Id.* at 1525; see also ALA. CONST. Art. I, § 14 (providing that Alabama "shall never be made a defendant in any court of law or equity"). Therefore, to the extent Plaintiff asserts *official* capacity money damages claims against these Defendants, they are due to be dismissed.

**D.     Count One - No Individual Liability For Discrimination Claims under Title II of the ADA**

Because all Defendants in this case are individuals, Plaintiff's ADA Title II discrimination claim against them necessarily fails. Title II of the Americans with Disabilities Act requires proof: (1) that plaintiff is a qualified individual with a disability; (2) that plaintiff was excluded from the participation in or denied the benefits of the services, programs, or activities of a public entity or was otherwise subjected to discrimination by such entity; (3) by reason of such disability. *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001). Title II of the ADA "authorizes suits by private citizens for money damages against public entities that violate § 12132." *United States v. Georgia*, 546 U.S. 151, 154 (2006) (citing 42 U.S.C. § 12133). The term "public entity" includes state prisons. *Id.* (citing *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998)). "Individuals and private entities, however, are not subject to liability under Title II of the ADA." *Brenna v. Thomas*, 780 F. App'x 813, 822 (11th Cir. 2019) (unpublished) (per curiam) (citing *Edison v. Douberly*, 604 F.3d 1307, 1308 (11th Cir. 2010)). As such, "there is no individual capacity liability under Title II of the ADA []." *Badillo v. Thorpe*, 158 F. App'x 208, 211 (11th

Cir. 2005) (unpublished) (per curiam) (citing *Garcia v. S.U.N.Y. Health Scis. Ctr. Of Brooklyn*, 280 F.3d 98, 107 (2nd Cir. 2001)).

More specifically, Section 12132 mandates that "no qualified individual with a disability shall … be excluded from participation in or be denied the benefits of the services, programs, or activities of a *public entity*, or be subjected to discrimination *by any such entity*." 42 U.S.C. § 12132 (emphasis added). The Eleventh Circuit has stressed the importance of this language. In *Schotz v. City of Plantation*, the court distinguished between the language used in the section of the ADA relating to retaliation and the section relating to discrimination. 344 F.3d 1161, 1167-68 (11th Cir. 2003) (citing 42 U.S.C. §§ 12203(a), 12132). The former prohibits discrimination by any *individual*. *Id*. The latter, by any *public entity*. *Id*. As the *Schotz* Panel reasoned, "Congress knows how to use specific language to identify which particular entities it seeks to regulate." *Id*. Title II regulates entities rather than individuals. Accordingly, Count One of Plaintiff Amended Complaint, his ADA claim against the named individual Defendants, is due to be dismissed.[3]

### E. Count Two - Plaintiff's Section 1983 – Eighth Amendment Deliberate Indifference Claim

#### 1. Qualified Immunity

"[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "In order to receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Crenshaw v. Lister*, 556 F.3d 1283, 1289 (11th Cir.

---

[3] Although the Prayer for Relief in Plaintiff's Amended Complaint makes a catch-all request for "all other and further monetary and equitable relief," the only specific claim for relief is for money damages. (Doc. # 13 at 32).

2009) (internal quotations omitted). An official who was acting in the scope of his discretionary authority is entitled to qualified immunity unless the plaintiff can show that the official (1) violated a constitutional or statutory right; *and* (2) that the constitutional or statutory right was "clearly established" at the time of the official's alleged misconduct. *Id*. at 232.

Whether an official violated a constitutional or statutory right "may be a mixed question of law and fact." *See Hall v. Flournoy*, 975 F.3d 1269, 1275 (11th Cir. 2020) ("what did the officer do and did it violate the law?"). On the other hand, whether a constitutional or statutory right was clearly established is "purely a question of law, as it requires analysis of an issue wholly distinct from the merits of the case: even if the events transpired in the way the plaintiff asserts, did the alleged misconduct amount to a violation of clearly established law?" *Id*. The inquiries into whether there was a violation and whether the alleged violation was clearly established may be conducted independently, and in any order. *Pearson*, 55 U.S. at 236-37.

### 2. Deliberate Indifference under the Eighth Amendment

Plaintiff's Deliberate Indifference claim, contained in Count Two, is based upon Plaintiff's serious medical need of being a double above-knee amputee and the purported denial of necessary ADA accommodations. (Doc. # 13 at 25-28). The Amended Complaint alleges the following relevant events as having occurred during the two years preceding the filing of Plaintiff's initial Complaint: In June 2020, Plaintiff submitted a grievance requesting a transfer to Hamilton A&I to accommodate his disability. (Doc. # 13 at ¶¶ 65, 78). Medical Staff forwarded along Plaintiff's transfer request and Plaintiff was allowed to increase to 5 showers per week, but a handicap shower was not provided. (*Id*. at ¶¶ 66-67). In December 2020, Plaintiff was quarantined for a month with no heat in the chapel along with inmates who tested positive for COVID-19. (*Id*. at ¶ 69). He submitted a grievance stating he had been unable to shower, was in pain, and had to use the same

13

restroom as inmates who were positive with COVID-19. (*Id*. at ¶¶ 70-73). He was not provided cleaning supplies, but was told his request for mental health assistance had been forwarded along. (*Id*. at ¶¶ 72-73). During this period, Plaintiff was assaulted and robbed by another inmate. (*Id*. at ¶ 75). After his release from quarantine he was prohibited from showering because of inmates sleeping on the floor. (*Id*. at ¶ 76). In 2021, Plaintiff had trouble accessing his medications. (*Id*. at ¶¶ 81-85). He was assigned to a dorm that was not handicap accessible. (*Id*. at ¶ 86). He was assigned to a dorm that did not have accessible showers and he was not provided a shower chair. (*Id*. at ¶¶ 93-94). Plaintiff characterizes these events as a failure to provide accommodations that were requested in his grievances. (*Id*. at ¶¶ 79, 88, 96).

An officer acts within his discretionary authority when his behavior is "(1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority." *Est. of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018) (quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)). Plaintiff does not argue that the Warden Defendants were acting outside the scope of their discretionary authority (Doc. # 35 at 14-17) and his pleadings indicate that they were.

In the Eleventh Circuit, after a defendant has established that he was acting in a discretionary capacity, the plaintiff bears the burden of showing that qualified immunity is not appropriate. *See, e.g., Brooks v. Warden*, 800 F.3d 1295, 1306 (11th Cir. 2015). This showing consists of two steps, which may be considered in either order. First, the plaintiff must establish a violation of a statutory or constitutional right. *Pearson*, 555 U.S. at 232. Second, the plaintiff must show that the right was "clearly established" at the time of the asserted misconduct. *Id*.

Qualified immunity shields an individual if "a reasonable officer could have believed [his actions] to be lawful" at the time. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Anderson*

*v. Creighton*, 483 U.S. 635, 641 (1987)). But, officers are not immune if "no reasonably competent officer would have" acted the way the defendant did. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action." *Creighton*, 483 U.S. at 639.

Plaintiff's deliberate indifference claim implicates the right to safe shower access and better hygiene. To demonstrate that qualified immunity is not appropriate, however, Plaintiff must further show that his right to safe shower access and hygiene were "clearly established." "A right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right, (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right, or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1291–92 (11th Cir. 2009) (citations omitted). In this circuit, "only Supreme Court cases, Eleventh Circuit caselaw, and [state] Supreme Court caselaw can 'clearly establish' law." *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003).

Plaintiff has not identified a case from the Supreme Court, the Eleventh Circuit, or the Alabama Supreme Court with facts indistinguishable from the facts in this case, nor has the court found any such case in its research. Further, the wrongs at issue in this action are not so egregious as to be "at war with the command of the Eighth Amendment." *Brooks v. Warden*, 800 F.3d 1295, 1307 (11th Cir. 2015).

The court has located one quite similar district court decision in a case in the Middle District of Georgia. *Grayson v. Ivey*, 2020 WL 6054334, at *1 (M.D. Ga. June 25, 2020*), report*

15

*and recommendation adopted*, 2020 WL 4201194 (M.D. Ga. July 22, 2020). There, Plaintiff Bennie Grayson was an HIV-positive Georgia prisoner whose right leg is amputated below the knee. *Grayson*, 2020 WL 6054334, at *1. Plaintiff was housed at a non-ADA compliant facility and had requested transfer to another facility that could better accommodate his disability. *Id*. The central issue in that case was whether the defendants lawfully responded to Plaintiff's asserted need and requests for a shower chair during his confinement. *Id*. Plaintiff had taken two showers during a two-week period, fell on both occasions, and each time required medical treatment. *Id*. Nonetheless, the court granted defendants' motions for summary judgment on Plaintiff's Eighth Amendment claim on the issue of qualified immunity. *Id* at *4. The court held that there was no basis to conclude that "Plaintiff's right to safer shower access was [] 'clearly established.'" *Id.*

> The court is persuaded by that court's reasoning:
>
> No case with facts indistinguishable from the facts in this case is apparent. Nor are the wrongs at issue in this action so egregious as to be "at war with the command of the Eighth Amendment." *Brooks v. Warden*, 800 F.3d 1295, 1307 (11th Cir. 2015). Thus, the qualified immunity inquiry in this case turns on whether "a broad statement of principle" clearly established the wrongfulness of the Defendants' conduct.
>
> In assessing whether any broad principle proscribed the Defendants' actions or inactions, the Court must ask whether "[t]he contours of the right [were] sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The Eleventh Circuit has explained that "officers are not required to be creative or imaginative in drawing analogies from previously decided cases." *Glasscox v. City of Argo*, 903 F.3d 1207, 1218 (11th Cir. 2018) (internal quotations omitted).
>
> Based on these guidelines, there is no basis to conclude that any broad principle gave sufficient fair warning to the Defendants that their conduct was clearly proscribed. In large part, this conclusion is compelled by the fact that the Defendants' conduct implicates two different strains of Eighth Amendment caselaw. One strain relates to risks of bodily harm — in this case, the risk of harm arising from the use, by an amputee, of a shower with no shower chair or handrails. *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994) ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment"). Another strain relates to concerns of hygiene, and of human dignity — in this case, concerns arising from Plaintiff's forced choice between an unsafe

16

shower and no shower at all during his roughly two-week confinement at HSP. *See Brooks v. Warden*, 800 F.3d 1295, 1303–04 (2015) (explaining that "the deprivation of basic elements of hygiene" violates "the contemporary standard of decency that the Eighth Amendment demands") (internal quotations omitted).

In allowing Plaintiff to access the HSP showers, albeit without a shower chair, the Defendants sought to discharge their Eighth Amendment duty to provide Plaintiff with basic hygiene. In the process, the Defendants exposed Plaintiff to a risk of falling in the shower. As discussed below, several factual disputes, if resolved in Plaintiff's favor, could permit a reasonable jury to find for Plaintiff on his Eight Amendment claims arising from this risk. There is, nevertheless, no basis for the Court to conclude that Plaintiff's right to safer shower access was, in the fact-specific context of this action, "clearly established." As a result, the Defendants are entitled to qualified immunity from Plaintiff's Eighth Amendment claims.

In this action, all of the Defendants are entitled to qualified immunity from Plaintiff's Eighth Amendment deliberate indifference claim because Plaintiff has failed to satisfy his burden at the second step of the qualified immunity inquiry to show that a "clearly established" right was violated. Therefore, the court need not consider the first step of the qualified immunity inquiry to resolve Plaintiff's Eighth Amendment claim.

### 2. Plaintiff Has Not Established a Violation of a Clearly Established Statutory Right.

An Eighth Amendment claim may be based on a violation of a clearly established constitutional or statutory right. *Pearson*, 555 U.S. at 232 "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11-12 (2015) (internal quotations omitted). Although Plaintiff cannot prosecute an ADA Title II claim against the individual Defendants, the question now is whether Plaintiff has alleged a violation of a clearly established statutory right under Title II for purposes of his Eighth Amendment deliberate indifference claim.

Plaintiff relies on *Lonergan v. Florida Department of Corrections* to support his contention that his right to a transfer to an ADA compliant facility was clearly established. (Doc. # 35 at 16 (citing 623 F. App'x 990, 993-94 (11th Cir. 2015)). In *Lonergan*, the court held that the plaintiff

17

stated a prima facie claim under the ADA by alleging that prison officials would not transfer or otherwise accommodate him despite a pre-skin cancer diagnosis that limited the time he could spend in the sun. *Id*. The court stressed that, while inmates do not have a "right of transfer" under the ADA, "a prisoner's transfer from or to a particular prison may become relevant when prison officials attempt to determine what constitutes a 'reasonable' accommodation." *Id*. at 993-94 (quoting *Miller* 384 F.3d at 1266 n. 21).

Plaintiff argues *Lonergan* clearly establishes that "[a]lthough the general Rule explains that an inmate is never entitled to transfer to another prison, in the context of the ADA, the general rule can be excepted when that transfer is for a reasonable accommodation." (Doc. # 35 at 17). The court disagrees. First, *Lonergan* is an unpublished decision and cannot be viewed as clearly established law. Second, *Lonergan* and *Miller* provide only that a potential transfer may be *relevant* in determining what constitutes a reasonable accommodation. Those cases do not, as Plaintiff suggests, hold that a plaintiff is ever *entitled* to a transfer.

Instead, the *Lonergan* court made clear that the reasonableness of a transfer request is one element a court may use to determine "whether the prison's interests outweigh the Plaintiff's." *Lonergan*, 623 F. App'x at 994. But, "prison authorities still maintain a great deal of discretion in running their penal institutions, and such discretion normally outweighs any interest that any individual prisoner may have in [being] housed in a particular prison." *Id*. at 993-94 (quoting *Miller* 384 F.3d at 1266 n. 21). Because the cases Plaintiff cites make clear that prison officials maintain a great deal of discretion in whether to transfer an inmate as an accommodation for their disability, those cases cannot be said to clearly establish a right of transfer in *any* situation. Accordingly, even if Plaintiff could show that Defendants violated his rights under the ADA by failing to transfer him to a facility that could accommodate his disability (and, to be clear, he

cannot), Defendants would still be entitled to qualified immunity because Plaintiff has not met his burden to show that a right of transfer was clearly established.

### E.  State Law Claims

In addition to Plaintiff's federal claims under the ADA and § 1983, he alleges state law claims of negligence (Doc. # 13 at 29-30) and intentional infliction of emotional distress (*id*. at 31-32) under Alabama law. It is well settled in this Circuit that "state courts, not federal courts, should be the final arbiters of state law." *Ingram v. School Bd. of Miami-Dade Cty.*, 167 F. App'x 107, 108 (11th Cir. 2006) (quoting *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997)). Indeed, "[w]hen all federal claims are dismissed before trial, a district court should typically dismiss the pendant state claims as well." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)).

Here, because Plaintiff's federal claims are due to be dismissed, and because Plaintiff has not alleged any independent basis for subject matter jurisdiction over his state law claims, the court declines to exercise jurisdiction over those claims.

## IV.  Conclusion

For all of the reasons set forth above, Defendants' Motion to Dismiss is due to be granted. An order consistent with this memorandum opinion will be entered separately.

**DONE** and **ORDERED** this August 9, 2023.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE